UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANDRE C. BROWN,

                  Petitioner,                Case No. 1:14-cv-1184

v.                                   Honorable Robert J. Jonker

THOMAS WINN,

                  Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner Andre C. Brown is incarcerated with the Michigan Department of Corrections at the

Thumb Correctional Facility (TCF) in Lapeer, Michigan.  On March 17, 2010, a Kent County

Circuit Court jury found Petitioner guilty of unarmed robbery, MICH. COMP. LAWS § 750.530.  On

May 3, 2010, the court sentenced Petitioner as a habitual offender-fourth offender,

MICH. COMP. LAWS § 769.12, to a term of imprisonment of 19 to 40 years.

        On November 3, 2014,[1] Petitioner filed his habeas corpus petition raising seven

grounds for relief, as follows:

      I.        Insufficient evidence;

      II.      Great weight of evidence;

      III.     Due process right violations (the trial court improperly allowed 404(b)
                testimony, etc.);

---

[1] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

IV.     Prosecutorial misconduct (the prosecutor denied the defendant a fair trial and due process rights);

V.      Ineffective assistance of counsel;

VI.     Self-representation denial; and

VII.    Lacked probable cause affidavit or sworn testimony.

(Pet., ECF No. 1, PageID.6-10, 16-18.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because the petition is untimely,[2] the Court should decline review under the concurrent sentence doctrine, certain claims are barred by procedural default, certain claims are not cognizable on federal habeas review, and those that are cognizable have no merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I recommend that the Court decline to consider the petition under the concurrent sentence doctrine.  In the event the Court exercises its discretion to consider the merits of the petition, I recommend that the petition be denied on its merits.

## Discussion

### I.      Factual allegations

On December 9, 2007, Jennifer Jackson and Petitioner conversed by telephone. (Trial Tr. II, ECF No. 9-16, PageID.308.)  Petitioner told Ms. Jackson that his name was Marquis or Martise.  (*Id.*, PageID.309.)  Ms. Jackson did not hear the name clearly.  (*Id.*)  They arranged to meet face-to-face for the first time at Petitioner's apartment complex.  (*Id.*)  When Ms. Jackson

---

[2] Respondent's argument regarding the timeliness of the petition is based on its position that Petitioner's state habeas corpus proceeding was not a "properly filed application for State post-conviction or other collateral review" that would toll the running of the statute.  28 U.S.C. § 2244(d)(2).  For the reasons set forth in note 9, *infra*, Respondent's timeliness argument has no merit.

arrived at the complex, Petitioner joined her in the vehicle.  (*Id.*)  Petitioner provided driving directions to Ms. Jackson without identifying a destination.  (*Id.*)  Eventually she became uncomfortable and asked him to leave the vehicle.  (*Id.*)  Petitioner convinced her to permit him to stay.  (*Id.*)  Ms. Jackson continued to drive.  (*Id.*)

After about twenty minutes, as she waited at a red light at 4th Street and Stocking Avenue in Grand Rapids, Michigan, she put her foot down and insisted that Petitioner leave the vehicle.  (*Id.*, PageID.310.)  He refused.  (*Id.*)  She refused to drive on when the light turned green.  (*Id.*)  Cars behind her began to honk.  (*Id.*)  Petitioner kicked Ms. Jackson in the head and hit her with a closed fist.  (*Id.*)  In the midst of the attack, Ms. Jackson attempted to call for help on her cell phone.  (*Id.*)  Petitioner grabbed the phone and fled.  (*Id.*)

Ms. Jackson exited the vehicle and yelled for help.  (*Id.*)  A man ran to assist her.  (*Id.*)  He had already called the police.  (*Id.*)  He handed his phone to Ms. Jackson so she could explain what happened.  (*Id.*, PageID.311.)  The police arrived shortly thereafter.  (*Id.*)

The police attempted to follow Petitioner, tracking him with a canine unit.  (*Id.*, PageID.320-321.)  They did not locate Petitioner, but they found one-half of Ms. Jackson's cell phone.  (*Id.*)

Ms. Jackson was able to provide to the police the phone number she had used to contact Petitioner.  (*Id.*, PageID.312.)  Through that number, the police were able to identify Petitioner.  (*Id.*, PageID.327.)

The prosecutor charged Petitioner with unarmed robbery, MICH. COMP. LAWS § 750.530, or, alternatively, with assault with intent to commit robbery while unarmed, MICH. COMP. LAWS § 750.88.  The jury heard testimony from Ms. Jackson, the police

officers who responded to the scene or otherwise investigated the crime, and, for purposes of establishing identity, other police officers who had encountered Petitioner.  Sergeant Mark Mathis testified that he had interacted with Petitioner on November 17, 2007.  (*Id*., PageID.323.)  At that time, Petitioner had identified himself as Andre Brown and provided a phone number and address. (*Id*., PageID.324.)  Officer John Newberry testified he had contact with Petitioner on May 6, 2006. (*Id*.)  Petitioner identified himself on that date as Matrice Dickinson.  (*Id*.)  Ms. Donna Moore Brown, an employee of the Kent County Correctional Facility, testified that when she verified the fingerprints of the individual identified as Matrice Dickinson, the fingerprints actually belonged to Andre Cortez Brown.  (*Id*., PageID.325.)

The jury found Petitioner guilty of unarmed robbery.

Petitioner's criminal prosecution relating to the incident with Ms. Jackson, Kent County Circuit Court Case No. 08-05181-FH, proceeded in parallel with another prosecution relating to an armed robbery of a 7-11 store on April 17, 2008, Kent County Circuit Court Case No. 08-06288-FC.  In much the same way, Petitioner's federal habeas corpus petitions relating to the convictions have proceeded in parallel in this Court.[3]

The same counsel represented Petitioner in the armed robbery and the unarmed robbery cases.  Judge Dennis Lieber of the Kent County Circuit Court presided over both cases.

---

[3]Petitioner was denied habeas relief with respect to the armed robbery convictions in *Brown v. Palmer*, No. 1:13-cv-976 (W.D. Mich.) (*Brown I*), on July 29, 2016.  *Brown I* (Op., ECF No. 26).  In Chief Judge Jonker's opinion, he described the relationship between the parallel state court proceedings.  The analysis of that relationship set forth herein borrows heavily from Chief Judge Jonker's description of it in *Brown I*.  Similarly, the analysis regarding Petitioner's request for self-representation derives from Judge Jonker's analysis of the issue in *Brown I*.

For administrative convenience, certain pretrial matters were conducted for both cases at the same time.[4]

Although Petitioner was represented by the same appointed counsel in both cases, counsel changed frequently as the cases progressed.  Petitioner quickly became disenchanted with his counsel of the moment.  He would file grievances against counsel, counsel would move to withdraw, and new counsel would be appointed.  In the state lower court proceedings, Petitioner was represented by James Howard, then James Milanowski, then John Pyrski, then Thomas Baynton, and then Joseph Tevlin.[5]  Attorney Tevlin sought leave to withdraw for the first time during August of 2009 (Mot. Hr'g Tr., ECF No. 9-11).   At the hearing, the court expressed its concern that Petitioner was cycling through attorneys for one of two reasons, either as some sort of strategy to delay the proceedings or because he was not competent to assist in his own defense.  (*Id*., PageID.264-65.)   Accordingly, the court denied the motion to withdraw and ordered an evaluation of Petitioner's competence.  (*Id*.)

Subsequent to the hearing on Attorney Tevlin's motion to withdraw, Petitioner requested self-representation for the first time.  In a handwritten letter that Petitioner directed to the circuit court during September of 2009, Petitioner states: "I, Andre C. Brown request to represent myself in both Armed/unArmed Robbery cases, with co-counsel."  *Brown I* (ECF No. 16-9, PageID.246.)   Prior to that letter, the record does not include any request for self-

---

[4]The overlap between the two cases is readily apparent when one compares the Rule 5 materials for this case with the Rule 5 materials submitted in *Brown I*.

[5]*Brown I* (Op., ECF No. 26, PageID.732.)  David LaGrand was appointed for just three days after Thomas Baynton withdrew.  The circumstances attendant to his withdrawal and the substitution of Joseph Tevlin, other than as cryptically described in the circuit court docket, are not apparent in the record.  (ECF No. 9-1, PageID.193.)

representation by Petitioner.[6]  Indeed, at a hearing on August 14, 2009, Petitioner stated and then

repeated: "I never said I wanted to represent myself." (Mot. Hr'g Tr., ECF No. 9-11, PageID.265.)[7]

Subsequent to the September letter, Petitioner's competence was evaluated.  The

results of that evaluation were offered in evidence at a hearing on December 16, 2009.  Based on

that hearing, the circuit court concluded that Petitioner was competent to assist in his defense and

stand trial and that he was cycling through counsel as some sort of strategy to foster delay.

(ECF No. 9-12, PageID.268.)[8]  Based on that conclusion, and to avoid further delay, the court

denied Attorney Tevlin's renewed motion to withdraw.  (*Id*.)  The hearing concluded with the

following exchange:

> THE DEFENDANT:  I don't want Mr. Tevlin to represent me.
>
> THE COURT: If he is not of good behavior, he will not be permitted to remain in the courtroom, and we'll try him in absentia, but these cases will continue without adjournment.
>
> THE DEFENDANT:  I would like to represent myself.  I have a constitutional right to represent myself.
>
> THE COURT: That motion is denied, sir.  Mr. Tevlin will represent you.

---

[6] In a letter to Judge Paul Sullivan, then chief judge of the Kent County Circuit Court, dated October 5, 2008, Mr Brown noted: "All motions sent to Judge Dennis Leiber was denied, And in this process Judge Leiber quoted 'Mark Twain' calling me a fool for desiring to represent myself, . . . ." *Brown I* (ECF No. 16-4.)  The hearing at which Judge Leiber made that comment occurred on June 27, 2008 in the unarmed robbery case (Mot. Hr'g Tr., ECF No. 9-3, PageID.243).  The comment was not made in response to any request by Petitioner to represent himself; rather, it was made to support a suggestion that Petitioner might be better served to rely on the advice of his competent counsel instead of rejecting their advice in favor of Petitioner's preferred course of action.  (*Id*.)  The October 5, 2008, letter cannot be construed as a request for self-representation.

[7] Petitioner made that representation at the hearing on Attorney Tevlin's motion to withdraw.  In the motion, Attorney Tevlin stated: "It is apparent that Mr. Brown desires to represent himself at the trials in these matters, given that he refuses to accept or acknowledge any statements or opinions given to him by legal counsel." *Brown I* (ECF No. 16-8, PageID.243.)  Petitioner clearly disclaimed that intention.

[8] To the extent the many changes in counsel were a stratagem to cause delay, it proved successful.  Both of Petitioner's trials commenced nearly two and one-half years after the respective robberies.

THE DEFENDANT:  All right.

(*Id.*)

On March 15, 2010, Petitioner's trial on the unarmed robbery charge commenced. After the jury was selected and sworn, Attorney Tevlin again advised the court that Petitioner wanted to represent himself and asked the court to consider the request and to make the findings required by *People v. Anderson*, 247 N.W. 2d 857 (Mich. 1976).  (Trial Tr. I, ECF No. 9-15, PageID.299.)   When the court asked Petitioner to confirm his desire for self-representation, Petitioner noted counsel's shortcomings and Petitioner's dissatisfaction with the trial strategy and then stated:

> So, I don't know if that would be ineffective Counsel–ineffective assistance of counseling which will violate my Sixth Amendment, but I do know that it's–if, you know, if–if–if–if I'm just going to be railroaded and not have–I would take the chance of getting myself cooked on the stand if I'm not going to have the things needed provided by counsel, provided by law as far as witnesses and different other elements needed to show that I am innocent by a thousand percent from this case right here.  And, that's all I have to say about that.

(*Id.*, PageID.300.)   The court denied the motion.   The court noted that the right to self-representation depends on a three-fold showing: (1) the request must be unequivocal; (2) the request must be knowing, intelligent, and voluntary; and (3) the request must not impose undue inconvenience or burden on the court.  (*Id.*, PageID.301-02.)  The court concluded that Petitioner's request was not unequivocal in that it was premised on his ability to obtain the testimony of witnesses who had not yet been called into court by subpoena.  (*Id.*)  The court further concluded that granting the request would create undue delay, inconvenience and burden.  (*Id.*)

The trial went forward.  Petitioner was represented by Mr. Tevlin.  The transcript reveals that Mr. Tevlin proceeded with certain lines of questioning at the behest of Petitioner, *see i.e.* (Trial Tr. II, ECF No. 9-16, PageID.315-16), and even read a closing statement prepared by Petitioner (Trial Tr. III, ECF No. 9-17, PageID.344).  The jury found Petitioner guilty of unarmed robbery.  (*Id.*, PageID.345.)  Petitioner was afforded the opportunity to address the court and argue on his own behalf at sentencing.  (Sentencing Tr., ECF No. 9-18.)

Petitioner has presented his habeas issues to each level of the state court system by way of his direct appeal, a habeas corpus petition initiated in Ionia County Circuit Court,[9] and, most recently, by way of a motion for relief from judgment under Rule 6.500 *et seq.* of the Michigan Court Rules.  The state courts have rejected each challenge.

## II.    Concurrent sentence doctrine

The "concurrent sentencing doctrine" invests the court with discretion to decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction.  *See United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989).  The doctrine has its origins in appellate practice applicable to direct review of

---

[9] Respondent did not provide the state court record from Petitioner's state habeas corpus proceedings.  Petitioner, however, provided sufficient parts of the record in *Brown v. Palmer*, No. 1:13-cv-1137 (W.D. Mich.) (herein "*Brown II*"), Petitioner's first habeas petition challenging his unarmed robbery conviction.  Judge Gordon Quist dismissed the petition in *Brown II* as premature.  Petitioner's state habeas corpus petition was still working its way through the state courts when Petitioner filed the *Brown II* petition.  *Brown II* (Op., ECF No. 8.)  Judge Quist concluded that "Petitioner's state habeas corpus action tolled the statute of limitations when it was filed."  *Brown II* (Op., ECF No. 8, PageID.418.)  Judge Quist also noted that the running of the statute would remain tolled "during the time between a lower court decision and the proper filing of an appeal to a higher state court, including an appeal to the Michigan Supreme Court."  *Brown II* (Op., ECF No. 8, PageID.418 n.1.)

 Petitioner supplied the state court habeas record when he attempted to reopen *Brown II* upon completion of the state court appellate process.  Judge Quist denied Petitioner's request to reopen *Brown II*; he instructed Petitioner to file a new habeas action instead.  *Brown II* (Ord., ECF No. 17.)  The instant petition is Petitioner's response to Judge Quist's instruction.

criminal cases.  *See Benton v. Maryland*, 395 U.S. 784, 788-91 (1969); *Hirabayashi v. United States*, 320 U.S. 81 (1943).  In these cases, the Supreme Court and the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent count is sufficient to retain the defendant in custody.  *See, e.g., Hirabayashi*, 320 U.S. at 105; *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976).  The standard guiding the court's discretion is whether there is any possibility of an adverse "collateral consequence" if the conviction is allowed to stand.  *See Hughes*, 964 F.2d at 541; *Dale*, 878 F.2d at 935 n.3; *see also United States v. Byrd*, No. 89-6448, 1990 WL 116538, at *3 (6th Cir. Aug. 13, 1990); *United States v. Jackson*, No. 99-5889, 2000 Wl 1290360, at *2 (6th Cir. Sept. 7, 2000); *United States v. Bell*, No. 95-6479, 1997 WL 63150, at *3 (6th Cir. Feb. 12, 1997).

Although the doctrine has its roots in direct appeals, the federal courts apply it in habeas corpus actions, citing the futility of reviewing a conviction that will not result in a petitioner's release from custody.  *See, e.g., Cranmer v. Chapleau*, No. 95-6508, 1996 WL 465025 (6th Cir. Aug. 13, 1996); *Scott v. Louisiana*, 934 F.2d 631, 635 (5th Cir. 1991); *Williams v. Maggio*, 714 F.2d 554 (5th Cir. 1983); *VanGeldern v. Field*, 498 F.2d 400, 403 (9th Cir. 1974).  The exercise of the court's discretion depends upon the degree of prejudice that may be attributed to the challenged conviction and, specifically, the effect of any adverse collateral consequence if the conviction is allowed to stand.  *Williams*, 714 F.2d at 555.  "'[A]dverse collateral consequences' such as 'delay of eligibility for parole, a harsher sentence under a recidivist statute for any future offense, credibility impeachment, and societal stigma[,]'" may be considered. *Buffin*

*v. United States*, 513 F. App'x 441, 448 (6th Cir. 2013).  Such remote consequences, however, "are most salient on direct appeal, not on a collateral challenge."  *Id.*[10]

      The present case is appropriate for application of the concurrent sentencing doctrine.  Petitioner is serving 19 to 40 years for the unarmed robbery conviction at issue in this petition.  However, he is serving a sentence of 33 to 50 years, consecutive to a sentence of two years, for his convictions on two counts of armed robbery, MICH. COMP. LAWS § 750.529, and one count of felony-firearm, MICH. COMP. LAWS § 750.227b, in Kent County Circuit Court Case No. 08-06288-FC.  Petitioner's earliest release date is October 27, 2045, exactly 35 years after his sentence was imposed on the armed robbery case.  That would not change even if the unarmed robbery conviction were invalidated.

      Although Respondent raised the concurrent sentencing doctrine issue in his response to the petition, Petitioner has not identified any consequence that might augur against applying the doctrine here.  Beyond the sort of consequences identified as "remote" above, no significant consequence would accrue if the doctrine were applied here.  Accordingly, I recommend that the Court exercise its discretion and apply the doctrine to deny Petitioner habeas relief.  In the alternative, however, I will address Petitioner's claims on the merits.

---

[10] The *Buffin* court pulled the list of collateral consequences from *United States v. DiCarlo*, 434 F.3d 447, 457 (6th Cir. 2006).  The *DiCarlo* court, in turn, quoted the list from *Rutledge v. United States*, 517 U.S. 292, 301-02 (1996).  The *Rutledge* Court derived the list of collateral consequences from *Benton v. Maryland*, 395 U.S. 784, 790-91 (1969), and *Sibron v. New York*, 392 U.S. 40, 54-56 (1968).  *DiCarlo*, *Rutledge*, *Benton* and *Sibron* were direct appeals.  Moreover, *Benton* and *Sibron* considered the existence of collateral consequences because absent such a consequence there would have been no justiciable controversy in those cases.  The *Benton* Court noted that the fact that it could conceive of collateral consequences that might give rise to a justiciable controversy and permit the court to exercise jurisdiction, did not deprive the concurrent sentencing doctrine of validity as a rule of judicial convenience.  *Benton*, 395 U.S. at 791.  The *Benton* Court simply chose to not apply it in that case.  *Id*. at 792.  *Rutledge* and *DiCarlo* (and the other cases cited in *DiCarlo*) are all double jeopardy cases where the existence of collateral consequences, no matter how slight, creates the multiple punishments barred by the Double Jeopardy Clause.  Such slight or remote collateral consequences would not preclude application of the concurrent sentencing doctrine when jurisdictional and double jeopardy considerations are not at issue.  If they did, the doctrine would simply disappear.  Such a result would be inconsistent with the Supreme Court's statement in *Benton* regarding the doctrine's continuing vitality.

### III.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. ___, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

A.    The sufficiency and "great weight" of the evidence (Issues I & II)

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [Court of Appeals'] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (*en banc*) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on

sufficiency-of-the-evidence grounds. *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the *Jackson* standard when it rejected Petitioner's challenge to the sufficiency of the evidence:

> Defendant first argues the evidence was insufficient to support his conviction. We disagree. We review de novo a claim that evidence was insufficient to sustain a conviction. *People v Phelps*, 288 Mich App 123, 131; 791 NW2d 732 (2010). We must determine whether the evidence would, when viewed in a light most favorable to the prosecution, "justify a rational trier of fact in finding that all the elements of the crime were proved beyond a reasonable doubt." *Id*. at 131-132. In doing so, we "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

> The crime of unarmed robbery is established by proving: "(1) a felonious taking of property from another, (2) by force or violence or assault or putting in fear, and (3) being unarmed." *People v Johnson*, 206 Mich App 122, 125-126; 520 NW2d 672 (1994). It is a specific intent crime that requires proof that the defendant intended to permanently deprive the owner of property. *People v Harverson*, 291 Mich App 171, 177; ___ NW2d ___ (2010). Defendant . . . argues that the evidence only showed he intended to prevent the victim from calling 911, not that he intended to permanently deprive her of her cellular telephone. This Court has explained that in the context of unarmed robbery, the intent element "'does not require, in a literal sense that a thief [intend] to permanently deprive the owner of the property.'" *Id*. at 178, quoting *People v Jones*, 98 Mich App 421, 425-426; 296 NW2d 268 (1980). "Rather, the intent to permanently deprive includes the retention of property without the purpose to return it within a reasonable time . . . ." *Harverson*, 291 Mich App at 178.

> The victim testified that defendant forcefully took her cellular telephone and exited the vehicle with it. The telephone was found, broken in two pieces, a block away. We note that circumstantial evidence and reasonable inferences that may arise from it can constitute satisfactory proof of the elements of the crime. *Kanaan*, 278 Mich App at 619. And, because of the difficulty of proving a state of mind, "only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent" for unarmed robbery. *Harverson*, 291 Mich App at 178. When viewed in a light most favorable to the prosecution, the forceful method by which defendant acquired the victim's cellular telephone, the subsequent location of the telephone, and the condition of the telephone is circumstantial evidence that would permit a rational jury to find that the requisite intent was proved beyond a

14

reasonable doubt.  *Phelps*, 288 Mich App at 131-132.  There was sufficient evidence to convict defendant of unarmed robbery.

(Mich. Ct. App. Op., ECF No. 9-20, PageID.357-358.)

Petitioner mounts two attacks to the sufficiency of the evidence: first, he argues that the evidence did not show his intent to permanently deprive his victim of her phone; and second, he argues the victim's testimony was inherently incredible.  Neither argument warrants relief.

With regard to Petitioner's first argument, he does not deny the existence of the evidence that the court of appeals concluded would support an inference of the requisite intent to deprive the victim of her property (method of acquisition, ultimate location, condition); instead, he challenges whether those facts evidence an intent to *permanently* deprive.  Put differently, Petitioner challenges the court of appeals' determination that the intent to retain property and not return it within a reasonable time is an intent to permanently deprive.  Such a challenge is outside the scope of habeas review.

It is the prerogative of the state to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").  If the state court concludes that an intent to retain property and not return it within a reasonable time is the intent necessary to support an unarmed robbery conviction, that determination is binding on this Court.  Petitioner's first challenge to sufficiency, therefore, is without merit.

15

Petitioner's second challenge fares no better.  Issues of credibility are beyond the scope of habeas review for sufficiency of the evidence.  *Herrera*, 506 U.S. at 401-02.

Petitioner's contention that the verdict is against the great weight of the evidence does not belong in a federal habeas petition.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial.  *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998).  The Michigan Court of Appeals concluded the Petitioner's verdict was not against the great weight of the evidence.  (Mich. Ct. App. Op., ECF No. 9-20, PageID.358.)

The "great weight" question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude." *Lemmon,* 576 N.W.2d at 133 n.8.  As a consequence, a "weight of the evidence claim" is purely a matter of state law and is not cognizable on habeas review.  *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a state's criminal judgment susceptible to a collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ( "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *accord Chatman v. Warden Ross Corr. Inst.*, No. 2:10-cv-1091, 2013 WL 1663919, at *10 (S.D. Ohio Mar. 26, 2013); *Underwood v. Berghuis*, No. 1:08-cv-642, 2011 WL 693 8471, at *15 (W.D. Mich. Aug. 8, 2011) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review.").  Because this Court lacks authority to review a state court's application of its

own law, the state-court's determination that the verdict was not against the great weight of the evidence is final.

B.    Due process and Rule 404(b) evidence (Issue III)

Petitioner next complains that this trial was rendered unfair by the admission of Rule 404(b) evidence regarding his prior "bad acts."[11]  Petitioner offers two arguments to support his claim that the evidence should have been excluded.  First, Petitioner argues that the prosecutor failed to comply with the procedural requirements for Rule 404(b) evidence, specifically the timeliness of the prosecutor's request for leave to introduce such evidence.  The court of appeals determined that Petitioner's counsel had waived that argument at trial and, thus, it would not be considered on appeal.  (Mich. Ct. App. Op., ECF No. 9-20, PageID.358-359.)  The procedural requirements for presenting Rule 404(b) evidence in the state court is purely a state court issue and violation of those requirements cannot form the basis for federal habeas corpus relief.

Second, Petitioner argues that the evidence was irrelevant and more prejudicial than probative.  The court of appeals also rejected those arguments:

> Defendant next argues that the evidence admitted under MRE 404(b), which related to his prior use of false names with police, should not have been admitted because it was irrelevant and more prejudicial than probative.  Neither argument has merit.  Generally, evidence of prior bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith."  MRE 404(b)(1).  However, evidence of prior bad acts or crimes may be admissible to show "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident."  MRE 404(b)(2).  In order for evidence to be admitted under MRE 404(b), the prosecution must first establish the evidence "is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity."  *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010).  Also, evidence admissible under MRE 404(b) may be excluded

---

[11] The prior "bad acts" were Petitioner's earlier contacts with police where he provided name and address information that either connected his true name to the telephone number used to contact Ms. Jackson, tied the address connected to the telephone number to Petitioner, or tied the use of the name Matrice to Petitioner.

if its probative value is substantially outweighed by its prejudicial value. MRE 403; *Mardlin*, 487 Mich at 616. A trial court's decision on whether to admit evidence pursuant to MRE 404(b) is reviewed for an abuse of discretion. *Id* at 614.

In the present case, all three witnesses who testified regarding MRE 404(b) evidence did so regarding defendant falsely identifying himself in the past, just as he did with the victim. Identity is an element of every criminal offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence of defendant's prior use of the same or similar false name was relevant evidence to establish defendant's identity because it tended to show he used the same false name when making contact with the victim. Additionally, defendant has failed to demonstrate that the probative value of the evidence was "*substantially* outweighed by the danger of unfair prejudice." MRE 403 (emphasis added). "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). We defer to the trial court's determination under MRE 403 because of the court's ability to contemporaneously assess "the presentation, credibility, and effect of testimony . . . ." *People v VanderVliet*, 444 Mich 52, 81; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994); see also MCR 2.613(C). Because the evidence was relevant and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, the trial court did not abuse its discretion in admitting the evidence. *Mardlin*, 487 Mich at 614-616.

(Mich. Ct. App. Op., ECF No. 9-20, PageID.359.)

The Michigan courts concluded that the evidence was admissible as a matter of state evidentiary law. That determination is binding on this Court.[12] The question remains, however, as to whether the introduction of such "prior bad acts" evidence might have been so unfairly prejudicial as to violate his due process rights. The Michigan Court of Appeals did not

---

[12] It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

directly address this constitutional issue; however, it necessarily follows from the appellate court's conclusion that the evidence was not unfairly prejudicial, that Petitioner's due process rights were not violated.

State court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). The Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "other bad acts" evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme

Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.  Accordingly, Petitioner cannot demonstrate that the state courts' conclusion regarding the admissibility of "prior bad acts" evidence is contrary to, or an unreasonable application of, clearly established federal law. Therefore, he is not entitled to habeas relief on this issue.

### D.    Prosecutorial misconduct (Issue IV)

To obtain habeas relief on the basis of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12-13;  *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have

substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103). Petitioner has failed to make the necessary showing.

Petitioner identified several instances of prosecutorial misconduct in the state appellate courts. In this petition, he focuses on two such instances: (1) the prosecutor vouched for the credibility of a witness by saying that the jury should find that the victim was telling the truth; and (2) the prosecutor improperly added facts not in evidence by stating that he'd never seen a woman hit with a fist in his life. (Pet., ECF No. 1, PageID.10.)

### 1.    Vouching

Petitioner contends that the prosecutor impermissibly vouched for the credibility of the Ms. Jackson. The federal courts have generally recognized two types of objectionable vouching. *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v. Mitchell*, 668 F.3d 307, 328-29 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard). The first type impermissibly places the government's prestige behind the witness to bolster the witness' credibility. *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th

Cir. 1992).  In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt.  *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965); *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).[13]

With regard to Ms. Jackson's credibility, the prosecutor argued as follows:

Quite simply, if you believe Jennifer Jackson's testimony, then the defendant is guilty.  I think there are a number of reasons that I would like to point out why you should believe Ms. Jackson in this particular case.

One is she has no motive to come in and make up a story about the defendant, nor has there been any evidence to that effect during the course of this trial.  In fact, quite the contrary.  You saw her up there testifying, getting cross-examined, getting questioned about things that were embarrassing to her.  She was embarrassed when Officer Beracy came and asked her the circumstances under which she became involved with this Martise, and she had to come here in front of you, yes, I lied to Officer Beracy.

She answered numerous questions on cross-examination from Mr. Tevlin, and I'm sure that was difficult for her up there having her life—or her credibility questioned and called essentially a liar on the stand.

When you look at the surrounding circumstances, what motive would she have to frame the defendant?  This is a person she knew for about 10, 20 minutes she testified.

You heard Officer Beracy testify that when he got to the scene she was distraught, she was hysterical, which is what you would expect under these circumstances.

---

[13] Notwithstanding the Sixth Circuit's continuing application of its own precedent on vouching, *see Wogenstahl*, 668 F.3d at 328-29 (citing *Johnson*, 525 F.2d at 482), the Supreme Court has not directly held that vouching amounts to prosecutorial misconduct.  Given the Supreme Court's recent admonitions to the courts regarding the limits of clearly established general principles, it is doubtful that vouching has been clearly established by the Supreme Court as a due process violation.  *See, e.g., Lopez*, 135 S. Ct. at 3 (holding, with respect to a claim of self-representation, that "[c]ircuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshal v. Rodgers*, 133 S. Ct. 1446, 1450 (2013); *White*, 134 S. Ct. at, 1703 (same, respecting a claim regarding the privilege against self-incrimination); *Parker*, 567 U.S. at 49 ("The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in *Darden* bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here.").

\*    \*    \*

You saw her demeanor.  Do you think she was telling a lie to you when she was up here testifying?  She really had no motive.  Commit perjury so she could charge him with a crime.  Look at the way she reacted.  This is clearly something traumatic in her life.

Let's look at the surrounding circumstances as well.  She didn't know the name Andre Brown.  How would she have a phone number that was only accessed by Detective Recor through a police information system that is not accessible to Ms. Jackson—and I believe she also testified she didn't even have internet service at that time.  This number just happened to lead to the defendant.

The address that was given just happened to lead to the defendant.  Is there any motive for her to tell anything other than the truth?  I don't think so.  You saw her demeanor when she was there testifying.  She was telling the truth about what happened on the night in question.

\*    \*    \*

When you go back there and ask yourself, Was she telling the truth?  I think you're going to come to the same conclusion that myself and Detective Recor did, and that is, yes, she is and, if you believe that, then he is guilty of the crime of unarmed robbery.

(Trial Tr. III, ECF No. 9-17, PageID.335-337.)  Petitioner objects to the last sentence.

There can be no question that that the prosecutor's statement informs the jury that the prosecutor and Detective Recor believed Ms. Jackson's testimony was credible, the first type of improper vouching identified by the Sixth Circuit.  The Michigan Court of Appeals recognized the objectionable nature of the prosecutor's argument:

While "[a] prosecutor may comment on the credibility of witnesses during closing arguments," *Lodge*, 157 Mich App at 550, and "may argue from the facts that a witness should be believed," *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005), a prosecutor may not suggest a personal belief in defendant's guilt, *Bahoda*, 448 Mich at 282-283.  To the extent the remarks suggested the jury should convict because the prosecutor and the police personally believed the victim, the challenged statement was error.  *See People v Swartz*, 171 Mich App 364, 371; 429 NW2d 905 (1988).  Nevertheless, the comment also explicitly reminded the

23

jury that it was their prerogative to determine the victim's credibility based on the evidence presented.   We conclude that the trial court's instruction that the arguments of the attorneys were not evidence dispelled any prejudice. *See Callon*, 256 Mich App at 330-331.

(Mich. Ct. App. Op., ECF No. 9-20, PageID.362.)

Was the state appellate court's analysis regarding the resulting prejudice to Petitioner contrary to, or an unreasonable application of *Darden*, the clearly established federal law on this issue?  It was not.  The state court based its conclusion regarding the lack of prejudice on the curative instruction provided by the trial court.  The *Darden* court did so as well.  *Darden*, 477 U.S. at 182 ("The trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence."). Even if this Court might resolve the question differently, it cannot be said that the court of appeals' decision "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47.  Accordingly, Petitioner is not entitled to habeas relief on his vouching claim.

2.      Facts not in evidence

Petitioner also complains that the prosecutor argued improperly when he stated that he had never seen a woman struck with a closed fist:

But you heard Ms. Jackson about how traumatic this was and, when we're defining whether or not this was savage or not, look at the size difference and obvious strength difference between the defendant and Ms. Jackson.  I have never in my life seen a woman hit with a closed fist, nor do I think that's appropriate.  In every single instance when that is the case, I would define it as a savage attack from someone that doesn't know you at all.

(Trial Tr. III, ECF No. 9-17, PageID.337.)  The court of appeals agreed:

A prosecutor may not make a statement of fact to the jury that is unsupported by evidence. *Id*. at 450.  Here, the prosecutor's comment about his personal

24

> experience was not supported by the evidence; therefore, we agree this comment constitutes plain error.  Nevertheless, this error does not warrant reversal because any prejudice was cured by the trial court's instruction that the arguments of the attorneys were not evidence.  *See Callon*, 256 Mich App at 330-331.

(Mich. Ct. App. Op., ECF No. 9-20, PageID.361.)  Once again, it cannot be said that the Michigan Court of Appeals erred "beyond any possibility for fairminded disagreement[,]" *Parker*, 567 U.S. at 47,  when it concluded that any prejudice was cured by the trial court's instruction that attorney argument was not evidence.  The state appellate court's resolution is consistent with clearly established federal law and based on a reasonable determination of the facts on this record. Petitioner is not entitled to habeas relief on either of his prosecutorial misconduct claims.

### E.    Ineffective assistance of counsel (Issue V)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test to establish a claim of ineffective assistance of counsel:  (1) counsel's performance must fall below an objective standard of reasonableness; and (2) counsel's deficient performance must prejudice the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court

determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The petition refers the Court to a supporting memorandum of law to identify the specific instances of ineffective assistance of counsel.  Petitioner filed no supporting memorandum of law in this case; however, he filed one in *Brown II*.  (*Brown II* Memo. of Law in Support of Writ of Habeas Corpus, ECF No. 4.)  The Court will review the ineffective assistance claims raised in the Memorandum.

Petitioner argues that his counsel was unconstitutionally ineffective because counsel failed to introduce testimony that the perpetrator's cell phone number provided by the victim, 551-2106, was registered to two people, not Petitioner.  Petitioner contends his trial was unfair because counsel failed to call a witness to show that Live Links, the telephone service through which the victim first contacted her assailant, requires men to "register" and Petitioner

26

was not registered.  Petitioner complains that counsel failed to call a witness to show that there were no telephone calls from 551-2106 to Live Links on the night of December 9, 2007.  Petitioner also states that counsel should have called Petitioner's mother as a witness to show that the phone number did not belong to her.  Petitioner claims counsel should have objected when the investigating officer testified that after the officer called the number and left a message, a person that identified himself as Andre Cortez Brown called the officer back.

Petitioner claims his counsel should have called as a witness the private investigator hired by the defense.  Petitioner states the investigator would have impeached the victim because she told the investigator she gave her telephone records to the police but the police said she did not.  Petitioner argues that counsel should have impeached the victim by inconsistencies between the 911 call, her statements to the police, her preliminary examination testimony, and her trial testimony.

Petitioner also states that counsel failed to investigate Petitioner's alibi.  Petitioner maintains that he was in jail in either Mason or Ingham County on the night of the incident.  Although the probation officer told the private investigator that Petitioner was released on December 2, 2007, Petitioner is adamant that the original records might show otherwise.  Moreover, Petitioner contends, the Live Links records might have shown that the same number was used to call Live Links on nights before Petitioner was released.  Finally, Petitioner also claims counsel should have obtained Ms. Jackson's phone records to verify her statements.

Petitioner believes his counsel should have objected more strenuously to keep out the Rule 404(b) evidence.  Petitioner also believes counsel should have removed two jurors, a recent victim of two crimes and the daughter of a Wyoming Police Officer.

27

Although the Michigan Court of Appeals did not refer to *Strickland*, the court applied the same standard:

> To prove ineffective assistance of counsel defendant must demonstrate: (1) his counsel's performance fell below an objective standard of reasonableness, and (2) it is reasonably probable that the result of the proceeding would have been different but for counsel's alleged error, rendering the result fundamentally unfair or unreliable. *Id*. at 578; *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Reviewing courts must apply a strong presumption that counsel's performance fell with a wide range of reasonable professional assistance. *LeBlanc*, 465 Mich at 578.

(Mich. Ct. App. Op., ECF No. 9-20, PageID.363.) Thus, it cannot be said that the state appellate court applied the wrong standard.

Moreover, the state court applied the standard reasonably. The court rejected Petitioner's claims generally because Petitioner had failed to support his statements regarding the facts counsel would have found upon further investigation or the witnesses or evidence his counsel should have presented. The state appellate court opined:

> Defendant first argues his trial counsel was ineffective in failing to call a number of witnesses. "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). We find defendant's arguments regarding potential witnesses amounts to nothing more than speculation; defendant has failed to establish the "factual predicate" for his various claims of ineffective assistance. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Consequently, defendant has not overcome the strong presumption his trial counsel provided reasonable professional assistance in opting not to call certain witnesses. *LeBlanc*, 465 Mich at 578. We also find without merit defendant's argument that his trial counsel was ineffective in failing to impeach the victim with her prior testimony or with evidence of her lack of memory regarding the defendant's false name. Counsel was not ineffective because there was no basis to impeach the victim on these grounds.
>
> Defendant also contends his trial counsel failed to properly investigate the case. "When making a claim of defense counsel's unpreparedness, a defendant is required to show prejudice resulting from this alleged lack of preparation." *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). Defendant's argument

28

is predicated on facts not in the record; as a result, his claim that trial counsel failed to properly investigate must fail.  *Hoag*, 460 Mich at 6.

Defendant also alleges his trial counsel should have obtained an expert in eyewitness identification.  Again, defendant's argument is nothing more than speculation that an expert would have somehow benefited his defense.  Defendant has failed to overcome the strong presumption his trial counsel provided reasonable professional assistance in failing to obtain an expert in eyewitness identification.  *LeBlanc*, 465 Mich at 578; *Caballero*, 184 Mich App at 640.

Defendant makes a number of additional arguments regarding: testimony his counsel elicited; certain unidentified photographs; counsel's refusal to challenge two proposed jurors; the prosecutor failing to turn over the 911 tape; the use of a photographic lineup at trial; and counsel's failure to question one unspecified witness testifying with respect to a traffic stop that was admitted under MRE 404(b).  We find there is no factual basis provided for any of the above claims and defendant has failed to establish a factual predicate for his argument.  See *Hoag*, 460 Mich at 6.  Because review of the above claims is limited to mistakes apparent on the record, *Mack*, 265 Mich App at 125, defendant has not met his burden of showing counsel's performance fell below an objective standard of reasonableness, *Odom*, 276 Mich App at 415.

(Mich. Ct. App., ECF No. 9-20, PageID.363.)  The crux of the court of appeals' analysis is that there are simply no facts of record to support Petitioner's claims that his counsel was ineffective.

The state court's determination that Petitioner's claims of prejudice based on the counsel's failure to call witnesses was purely speculative is neither contrary to nor an unreasonable application of clearly established federal law.  Petitioner offers nothing to support his speculation that the testimony of his mother, the private investigator, the "Live Links" records custodian, the custodian of records for the telephone company for 616-551-2106, or Petitioner's jailer would have been favorable to him.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).[14]

---

[14] *See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Neverson v. Farquharson*, 366

Although Petitioner did not provide the Michigan Court of Appeals with any factual support for his speculative claims regarding other witnesses, Petitioner has provided this Court with additional information.  Perhaps the most illuminating documents are the reports from the police and Petitioner's private investigator.  (ECF No. 9-21, PageID.738-751); *see also Brown II* (ECF No. 4-2, PageID.241-254.)  Those reports are not part of the trial record.  It does not appear they were part of the record at the Michigan Court of Appeals either.  Indeed, the absence of those records permitted appellate counsel to argue with a clean conscience that trial counsel was ineffective for failing to call those witnesses.  Taking the reports into account, however, reveals that counsel would have been ineffective if he had called those witnesses.[15]

---

F.3d 32, 45 (1st Cir. 2004) ("[H]e has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense."); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) ("Zettlemoyer cannot meet his burden . . . based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("[Petitioner's] failure to [show] what an expert witness would have testified regarding the mental health evidence . . . reduces any claim of prejudice to mere speculation and is fatal to his claim."); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.") (internal citations omitted); *United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) ("Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding."); *Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) ("Smith merely speculates as to the expert testimony that could have been produced, but '[s]peculation about what an expert could have said is not enough to establish prejudice.'"); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'").

[15] The cell phone may have been registered to two different persons, but one of those persons had the surname Brown and lived at Petitioner's address.  Indeed, Petitioner had provided that number as his own to Petitioner's parole officer. The cell phone had been used several times to contact Live Links.  Moreover, even though the dates of use did not include December 9, they would have refuted Petitioner's claim that he was in jail after December 2.  Additionally, a representative of Live Links had reported that a male did not need to register to participate in Live Links.  In short, the additional information provided by the reports has the effect of moving his claims of prejudice from the category of speculative to the category of false.

30

The additional records were not before the state court that adjudicated Petitioner's claim on the merits, the Michigan Court of Appeals.  Accordingly, this Court may not consider them.  *Cullen*, 563 U.S. at 181-82.  Based on the record before the Michigan Court of Appeals, the determination that Petitioner's claim of prejudice from counsel's failure to call witnesses or introduce evidence was speculative was eminently reasonable.  Accordingly, Petitioner is not entitled to habeas relief on that basis.

Petitioner's suggestion that trial counsel failed to adequately investigate the case finds no support in the record.  The state appellate court's determination to that effect, therefore, is not unreasonable.  Trial counsel was the last in the series of attorneys representing Petitioner in this matter.  One of trial counsel's predecessors secured the services of a private investigator.  The investigator interviewed Petitioner and attempted to support Petitioner's claims of innocence with respect to this case and the parallel prosecution for armed robbery.  He simply could not.  For counsel to avoid pursuing such investigations further is not ineffective assistance.  As the Court stated in *Strickland*, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."  *Strickland*, 466 U.S. at 691.

Petitioner likewise fails to support his claim that counsel was ineffective for failing to challenge two jurors.   The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury . . . and to have the assistance of counsel for his defense."  U.S. CONST. amend. VI.  *Voir dire* plays an important role in ensuring the impartiality of the jury selected:

> It is true that "[*v*]*oir dire* 'is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion.'"  *Ristaino v. Ross*, 424

31

> U.S. 589, 594 (1976) (quoting *Connors v. United States*, 158 U.S. 408, 413 (1895)). The Constitution, after all, does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury. Even so, part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors. *Dennis v. United States*, 339 U.S. 162, 171-172 (1950); *Morford v. United States*, 339 U.S. 258, 259 (1950). "*Voir dire* plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion). Hence, "[t]he exercise of [the trial court's] discretion, and the restriction upon inquiries at the request of counsel, [are] subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310 (1931).

*Morgan v. Illinois*, 504 U.S. 719, 729-730 (1992) (parallel citations and footnote omitted). "Should counsel perform so deficiently during the jury selection process so as to deny the defendant his Sixth Amendment right to an impartial jury, the defendant may be entitled to relief on the basis of ineffective assistance of counsel." *Hanna v. Ishee*, 694 F.3d 596, 616 (6th Cir. 2012) (citing *Holder v. Palmer*, 588 F.3d 328, 338 (6th Cir. 2009)).

 The Michigan Court of Appeals addressed Petitioner's challenge only with respect to the effectiveness of counsel's assistance, not with respect to the partiality of the jurors that found Petitioner guilty. The trial court's decision to bypass the bias issue is understandable. Petitioner failed to identify anything in the record that might indicate the presence of juror bias or even a suspicion of juror bias. The jurors all agreed to apply the law as the court gave it to them. Moreover, each juror swore to render the verdict only on the evidence introduced. (Trial Tr. I, ECF No. 9-15, PageID.297.)

 Petitioner bears the burden to establish the existence of juror bias which caused him to suffer actual prejudice. *See Smith*, 455 U.S. at 215–17 (petitioner bears the burden to demonstrate that he suffered "actual bias" as a result of juror misconduct); *United States v.*

*Corrado*, 227 F.3d 528, 536 (6th Cir. 2000); *Sheppard v. Bagley*, 657 F.3d 338, 348–49 (6th Cir. 2011) (Batchelder, J. concurring).  Petitioner offers nothing substantive to call into question the jurors' impartiality.  Absent some demonstration of juror partiality, Petitioner cannot show the prejudice necessary to support his claim of ineffective assistance during jury *voir dire*.  The court of appeals' determination that Petitioner's claim is factually unsupported is, therefore, not inconsistent with clearly established federal law and is not unreasonable on this record.

The court of appeals' determination that counsel was not ineffective for failing to impeach Ms. Jackson with her prior testimony is also well-grounded in the record.  A comparison of Ms. Jackson's preliminary examination testimony and her trial testimony reveals nothing more than inconsequential differences.  (Prelim. Exam. Hr'g Tr., ECF No. 9-2; Trial Tr. II, ECF No. 9-16, PageID.308-320.)  Certainly, there were differences between what Ms. Jackson initially told police and her testimony; however, counsel explored those differences at length during cross-examination and centered his closing argument on them as well.

Finally, Petitioner's argument that counsel was ineffective for not objecting strenuously enough to the introduction of Rule 404(b) evidence, finds no support in the record.  Counsel objected on procedural and substantive grounds.  He was simply overruled.  Michigan Rule of Evidence 404(b) precludes the admission of evidence of prior bad acts "to prove the character of a person in order to show conformity therewith."  MICH. R. EVID. 404(b)(1).  The proscription is not absolute.  Such evidence is admissible for other purposes.  For example, it is admissible to prove identify.  *Id*.   Here, the evidence was admitted to prove that Petitioner identified himself not only as Andre Cortez Brown, but also as Matrice.  That identification was relevant because Ms. Jackson indicated that her assailant had identified himself with that or a

33

similar name.  Counsel's failure to press the matter further once the trial court had ruled against

him does not constitute ineffective assistance.  At that point it would have been futile to object.  It

is not ineffective assistance to fail to press a futile objection.  *See McQueen v. Scroggy*, 99 F.3d

1302, 1328 (6th Cir. 1996), *overruled on other grounds by Abdur'Rahman v. Bell*, 392 F.3d 174

(6th Cir. 2004).

In summary, the Michigan Court of Appeals' determinations, with respect to each

of the ineffective assistance claims that Petitioner continues to press in this Court, are consistent

with *Strickland* and reasonable on the record.  Accordingly, Petitioner is not entitled to habeas

relief.

F.    Right to self-representation (Issue VI)

The Sixth Amendment provides that a criminal defendant shall have the right to the

assistance of counsel for his defense.  U.S. Const. amend. VI.  At issue here is a corollary to that

right, the right to self-representation.  *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942)

("The right to assistance of counsel and the correlative right to dispense with a lawyer's help are

not legal formalisms.").  The clearly established federal law regarding self-representation is

expressed in two Supreme Court cases: *Faretta v. California* 422 U.S. 806 (1975) and *Martinez v.

Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152 (2000).

In *Faretta*, the Court found support for the right of self-representation in the

structure of the Sixth Amendment right to the assistance of counsel:

> The Sixth Amendment does not provide merely that a
> defense shall be made for the accused; it grants to the accused
> personally the right to make his defense. It is the accused, not
> counsel, who must be 'informed of the nature and cause of the
> accusation,' who must be 'confronted with the witnesses against
> him,' and who must be accorded 'compulsory process for obtaining

34

witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

The counsel provision supplements this design. It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. . . . This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.

*Faretta*, 422 U.S. at 819-821 (footnotes and citations omitted).  Although the Court recognized a criminal defendant's right to self-representation, it acknowledged that the right was a qualified one.  The Constitutional mandate to provide counsel to a criminal defendant is premised upon the fact that "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts."  *Id.* at 834.  Because a criminal defendant representing himself relinquishes that benefit, his waiver must be made "'knowingly and intelligently'".  *Id.* at 835.  Moreover, the right to self-representation must yield to "'the dignity of the courtroom.'"  *Id.* at 834, n. 46.  It is not a license to ignore the rules of procedure or engage in "obstructionist misconduct."  *Id.*

35

In *Martinez*, 528 U.S. 152, the Supreme Court concluded that the right of self-representation did not extend to appeals.   In reaching its conclusion, the Supreme Court commented on the scope of the right of self-representation established in *Faretta*, stating:

> As the *Faretta* opinion recognized, the right to self-representation is not absolute. The defendant must "'voluntarily and intelligently'" elect to conduct his own defense, and most courts require him to do so in a timely manner. He must first be "made aware of the dangers and disadvantages of self-representation."  A trial judge may also terminate self-representation or appoint "standby counsel"- even over the defendant's objection - if necessary. We have further held that standby counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as that participation does not "seriously undermin[e]" the " appearance before the jury" that the defendant is representing himself. Additionally, the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal "chores" for the defendant that counsel would normally carry out. Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.

*Martinez*, 528 U.S. at 161-162 (citations and footnote omitted).

Neither the trial court nor the state appellate court referenced *Faretta* or *Martinez* in evaluating Petitioner's request to represent himself.  Instead, the state courts relied on *People v. Anderson*, 247 N.W.2d 857 (Mich. 1976).  In *Anderson* the Michigan Supreme Court established three requirements that must be met before a criminal defendant in Michigan can proceed *pro se:*

> First, the request must be unequivocal . . . . Second, once the defendant has unequivocally declared his desire to proceed Pro se the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily. . . . The third and final requirement is that the trial judge determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business.

36

*Anderson,* 247 N.W.2d at 859-860.  The Michigan Supreme Court drew the requirements directly from the circumstances that swayed the *Faretta* Court to recognize the right of self-representation. *Id.* at 859 ("[T]he [*Faretta*] Court carefully noted the circumstances under which Faretta was deprived of his constitutional right to conduct his own defense.  The circumstances, affirmatively shown by the record, involved a clear and unequivocal request, weeks before trial, by a literate, competent, and understanding individual.")  Thus, considering Petitioner's request for self-representation under *Anderson* is consistent with and not contrary to clearly established federal law.

Here, the trial court considered and ruled on Petitioner's request for the first time on December 16, 2009,[16] after he had determined that Petitioner was competent to make the request. After recognizing that Petitioner had cycled through several attorneys and thereby caused significant delay, the trial court concluded that delay was Petitioner's purpose.  (Competency Hr'g Tr., ECF No. 9-12, PageID.269.)[17]  The court further concluded that inviting further delay by changing counsel or permitting Petitioner to represent himself, would result in manifest injustice for Petitioner and the prosecution.  (*Id.*)  Accordingly, the trial court denied Petitioner's request and Attorney Tevlin's motion to withdraw.  After that hearing, Petitioner made no requests for

---

[16] Petitioner made the request orally at the hearing (Mot. Hr'g Tr., ECF No. 9-12, PageID.269), and by letter in September of 2009, *Brown I* (ECF No. 16-9).

[17] The Michigan Court of Appeals affirmed the trial court's denial of Petitioner's request on the ground that, Petitioner's requests were not unequivocal.  (Mich. Ct. App. Op., ECF No. 9-20, PageID.364.)  The trial court certainly relied on that conclusion, as well as the issue of delay, when it denied Petitioner's request on the first day of his unarmed robbery trial.  (Trial Tr. I, ECF No. 9-15, PageID.301-02.)  The trial court did not mention the equivocal nature of Petitioner's request on December 16, 2009, relying instead on the issues of delay and, therefore, timeliness. Because timeliness considerations expressly supported the trial court's initial and subsequent denials, and because timeliness is dispositive with respect to each request, the undersigned has followed the same analytical path Chief Judge Jonker followed in *Brown I*, and centered its analysis on the timeliness issue.

self-representation other than on the first day of his unarmed robbery trial (and then again on the first day of his armed robbery trial).

The trial court's consideration of the timeliness of Petitioner's requests and concern regarding the delay that would follow from granting them is in no way contrary to clearly established federal law.  In *Hill v. Curtin*, 792 F.3d 670 (2015) (*en banc*), the Sixth Circuit explained:

> *Faretta* did not establish a bright-line rule for timeliness.  Its holding does, however, necessarily incorporate a loose timing element.  The *Faretta* Court explicitly stated that the defendant's request was "[w]ell before the date of trial," and "weeks before trial." It then held, "[i]n forcing Faretta, *under these circumstances*, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." Thus, to the extent that Faretta addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial.
>
> Beyond this loose limit, the *Faretta* Court did not address timeliness . . . . Although lower courts have since established rules regarding when a defendant must assert his right, . . . the Supreme Court has never defined the precise contours of *Faretta's* timing element.  Nor did the Supreme Court announce any clearly established law on timeliness in *Martinez*. . . . Given the general standard articulated in *Faretta*, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."

*Hill*, 792 F.3d at 678-79 (citations omitted, emphasis in original).

In light of the latitude afforded to state courts in determining the timeliness of a self-representation request, denial of such a request on the morning of trial is certainly not contrary to or an unreasonable application of clearly established federal law.  *Hill*, 792 F.3d at 678 ("'[*Faretta* ] can only be read to require a court to grant a self-representation request when the request occurs *weeks before trial*' –not on the morning of trial."); *Jones v. Bell*, 801 F.3d 556, 564-65 (6th Cir. 2015) (concluding that state court's rejection of a self-representation request on the first day of trial was not contrary to *Faretta*).  The denial of Petitioner's request in December of

38

2009, however, approximately twelve weeks before his first of two trials was scheduled to begin,[18] would appear to be closer to the claim implicitly determined to be timely in *Faretta*.

But considerations of timeliness are not limited to the number of weeks between the request for self-representation and the trial.  In *United States v. Cunningham*, 564 F. App'x 190 (6th Cir. 2014), the Sixth Circuit acknowledged that the timeliness determination contemplated by *Faretta* is "multifaceted."  *Id.* at 193.  "Courts consider not only the actual timing of the defendant's request, but also any threat posed to the orderly progression and integrity of the trial by a defendant's dilatory intent . . . ."  *Id.*; *see also Robards v. Rees,* 789 F.2d 379, 383 (6th Cir. 1986) (noting that requests that are "timely" may be denied where "the defendants' request for self-representation is merely a tactic to secure delay in the proceeding."); *Halder v. Tibals*, 561 F. App'x 454, 463 (6th Cir. 2014) ("This court has explained that a request to represent oneself is untimely . . . '[if it] is merely a tactic to secure delay in the proceeding.'").  Accordingly, the trial court's denial of Petitioner's request following the competency hearing based on its determination that Petitioner intended to delay the proceedings was not contrary to or an unreasonable application of clearly established federal law.  Moreover, the trial court's factual determination regarding Petitioner's attempt to delay the proceedings by way of his request for self-representation is not unreasonable on this record.

Petitioner also contends that the trial court erred by not undertaking the inquiry necessary to determine whether Petitioner's request was knowing and voluntary under *Anderson*, 247 N.W.2d at 857, and Michigan Court Rule 6.005.  To the extent that Petitioner claims that the

---

[18] After the competency hearing, the court scheduled Petitioner's armed robbery trial to begin April 19, 2010, *Brown I* (Docket Sheet, ECF No. 16-1, PageID.211), and his unarmed robbery trial to begin March 15, 2010 (Docket Sheet, ECF No. 9-1, PageID.196).

trial court failed to comply with requirements of state law, his claim is not cognizable on habeas review.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson*, 562 U.S. at 5 (quoting 28 U.S.C. § 2254(a)); *see also* note. 12, *supra*.  Moreover, although the inquiry Petitioner seeks may be constitutionally required before granting a request for self-representation, it is not constitutionally required before denying the request on grounds of timeliness.  *See Hill*, 792 F.3d at 677-78 ("[T]he U.S. Supreme Court has never held that a court must inquire into the basis of a defendant's request before denying it as untimely.").

Petitioner is not entitled to habeas relief for the state court's denial of his request for self-representation.

### G.    Validity of warrant (Issue VII)

In his final ground for relief, petitioner alleges that his arrest was invalid. Petitioner's assertion does not provide any basis for habeas corpus relief.  *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction).  The method by which petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction.  *See Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.");  *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinois*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at * 1 (6th Cir. Feb. 1, 1990) ("Petitioner's arguments that his arrest was absent probable cause . . . [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction.") (*citing*

*United States v. Crews*, 445 U.S. 463, 474 (1980)).  Accordingly, his claim of illegal arrest is to no avail.

## **Certificate of Appealability**

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  January 16, 2018                          /s/ Ray Kent
                                                  RAY KENT
                                                  United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).